**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ALYSSA A. SPURLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV411 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Alyssa A. Spurlock, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 14; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 180-88.) Upon denial of that application initially (Tr. 74-92, 114-17) and on reconsideration (Tr. 93-113, 121-25), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 130-32). Plaintiff, her

non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 31-73.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 9-25.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 6-8, 273-75), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since April 2, 2013, the application date.

. . .

2. [Plaintiff] has the following severe impairments: coronary artery disease; obesity; and anxiety with depression.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . in that she is able to lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. [Plaintiff] is unable to climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally climb ramps and stairs. [Plaintiff] can frequently balance. [Plaintiff] must avoid work with concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. [Plaintiff] can have no exposure to unprotected heights or dangerous machinery. [Plaintiff] can perform simple, routine, and repetitive tasks involving only 1 to 3 step instructions. [Plaintiff] can perform work with no high production demands. [Plaintiff]

can have occasional interaction with others in the workplace.

. . .

5.   [Plaintiff] is unable to perform any past relevant work.

. . .

9.   Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

10.  [Plaintiff] has not been under a disability, as defined in the [Act], since April 2, 2013, the date the application was filed.

(Tr. 14-24 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are

supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

was reached based upon a correct application of the relevant law."
Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that
"[a] claimant for disability benefits bears the burden of proving
a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981),
and that, in this context, "disability" means the "'inability to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than 12 months,'" id.
(quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the
adjudicative process, the Social Security Administration has . . .
detailed regulations incorporating longstanding medical-vocational
evaluation policies that take into account a claimant's age,
education, and work experience in addition to [the claimant's]
medical condition." Id. "These regulations establish a
'sequential evaluation process' to determine whether a claimant is
disabled." Id.

This sequential evaluation process ("SEP") has up to five
steps: "The claimant (1) must not be engaged in 'substantial

[1] The Act "comprises two disability benefits programs. The Disability Insurance
Benefits Program . . . provides benefits to disabled persons who have contributed
to the program while employed. [SSI] . . . provides benefits to indigent
disabled persons. The statutory definitions and the regulations . . . for
determining disability governing these two programs are, in all aspects relevant
here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations
omitted).

gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . .
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[4]

### B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[3] (...continued)
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[4]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) "the ALJ accepted vocational testimony that appears to conflict with the [Dictionary of Occupational Titles ('DOT')] yet he failed to obtain an explanation from the [VE]" (Docket Entry 12 at 2 (bold font omitted)); and

2) "the ALJ d[id] not give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] difficulties in the broad areas of functioning and d[id] not make a complete finding as to [Plaintiff's] mental [RFC]" (id. at 9 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 15 at 9-25.)

## 1. Conflicts Between the VE's Testimony and the DOT

In Plaintiff's first issue on review, she contends that the ALJ erred by failing to resolve three apparent conflicts between the VE's testimony and the DOT in violation of Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), and Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015). (See Docket Entry 12 at 2-9). According to Plaintiff, the VE's testimony that an individual with Plaintiff's mental RFC can perform the jobs of Marker (DOT No. 209.587-034, 1991 WL 671802 (4th ed. rev. 1991)), Stock Checker, Apparel (DOT No. 299.667-014, 1991 WL 672642)), and Final Inspector

(<u>DOT</u> No. 727.687-054, 1991 WL 679672)) (<u>see</u> Tr. 69) conflicts with the <u>DOT</u> in three respects: (1) the mental RFC's limitation to simple, routine, repetitive tasks ("SRRTs") involving one to three step instructions conflicts with the Reasoning Development Level ("RDL") of 2 required by all three of the VE's cited jobs (<u>see</u> Docket Entry 12 at 5-7); (2) the mental RFC's restriction to no high production demands conflicts with the Final Inspector and Marker jobs, both of which "appear[] to require a production pace per the [<u>DOT</u>] description" (<u>id.</u> at 7); and (3) the mental RFC's limitation to occasional interaction with others in the workplace conflicts with the description in the Occupational Information Network ("O*Net") of the degree of interpersonal contact required by the Final Inspector and Marker jobs (<u>id.</u> at 8-9). Plaintiff's contentions fall short.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the <u>DOT</u>:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [<u>DOT</u>]. When there is an <u>apparent unresolved conflict</u> between VE . . . evidence and the [<u>DOT</u>], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

As relevant to the instant case, the ALJ queried the VE whether an individual limited to SRRTs involving one to three step instructions, no high stress or high production demands, and occasional interaction with others, could perform any other jobs existing in significant numbers in the national economy. (See Tr. 68-69.) In response, the VE opined that such an individual would remain capable of performing the jobs of Marker, Stock Checker (Apparel), and Final Inspector, and provided the corresponding DOT codes for the three jobs, as well as their incidence in the national economy. (See Tr. 69.) The ALJ thereafter asked the VE whether the description of interaction in the Final Inspector and Marker jobs as "Taking Instructions-Helping" would "infringe upon the occasional interaction with others in the workplace," and the VE responded that the jobs involved only "superficial interaction with people." (Tr. 70; see also Tr. 71 (reflecting VE's testimony

10

that the fifth digits of the jobs' <u>DOT</u> codes indicated less intensive interaction with others).)  The VE subsequently confirmed that she knew of no other conflicts between her testimony and the <u>DOT</u>.  (<u>See</u> Tr. 71-72.)

The ALJ adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question:

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations, that are unskilled (SVP 2) and are performed at the light exertional level, such as a marker, [<u>DOT</u>] 209.587-034, with approximately 280,000 jobs available in the national economy; store clerk [sic] (apparel), [<u>DOT</u>] 299.667-014, with approximately 60,000 jobs available in the national economy; and a final inspector, [<u>DOT</u>] 727.687-054, with approximately 80,000 jobs available in the national economy.
>
> <u>Pursuant to SSR 00-4p, [the ALJ] ha[s] determined that the [VE's] testimony is consistent with the information contained in the [<u>DOT</u>].</u>
>
> Based on the testimony of the [VE], [the ALJ] conclude[s] that, considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(Tr. 24 (emphasis added).)

a. <u>RDL 2</u>

Plaintiff maintains that the mental RFC's limitation to SRRTs involving one to three step instructions conflicts with the RDL of 2 required by all three jobs cited by the VE, because RDL 2 entails

"the ability to follow oral or written *detailed* instructions."
(Docket Entry 12 at 5 (emphasis in original).)  Plaintiff notes
that the United States Court of Appeals for the Fourth Circuit has
"held in an unpublished case, 'that there is an apparent conflict
between an RFC that limits [the claimant] to one-to-two step
instructions and [RDL] 2, which requires the ability to understand
detailed instructions.'"  (Id. at 5-6 (quoting Henderson v. Colvin,
643 F. App'x 273, 277 (4th Cir. 2016)).)  Plaintiff concedes that
Henderson addressed a mental RFC involving only one to two step
instructions, rather than one to three step instructions as in the
instant case, but argues that "a number of district courts in the
Fourth Circuit have since invoked Henderson and found an apparent
conflict between [an RDL] of 2 or 3 and a[n RFC] limitation to
[SRRTs]."  (Id. at 6 (citing Dewalt-Gallman v. Berryhill, Civ. No.
9:16-2332-PMD-BM, 2017 WL 2257418, at *3-4 (D.S.C. May 5, 2017)
(unpublished), recommendation adopted, 2017 WL 2225133 (D.S.C. May
22, 2017) (unpublished), Lorch v. Berryhill, No. 3:16-CV-00076-RJC,
2017 WL 1234203, at *5 (W.D.N.C. Mar. 31, 2017) (unpublished),
Adkins v. Berryhill, No. 1:15-CV-000001-RLV, 2017 WL 1089194, at *4
(W.D.N.C. Mar. 21, 2017) (unpublished), and Owens v. Berryhill,
Civ. No. 9:15-4830-RMG-BM, 2017 WL 627405, at *7 (D.S.C. Feb. 2,
2017) (unpublished), recommendation adopted, 2017 WL 634696 (D.S.C.
Feb. 15, 2017) (unpublished)).)

As an initial matter, _Henderson_'s facts differ in a material way from the circumstances of the instant case. A job's RDL reflects the degree of analytical ability required by the job, with the levels arranged in ascending order of complexity from level 1 to level 6. _See generally_ _DOT_, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development (GED)"), 1991 WL 688702. A job with RDL 1 entails the abilities to "[a]pply commonsense understanding to carry out _simple one- or two-step_ instructions . . . [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." _Id._ (emphasis added). In contrast, a position rated at RDL 2 requires a worker to "[a]pply commonsense understanding to carry out _detailed but uninvolved_ written or oral instructions . . . [and] [d]eal with problems involving a few concrete variables in or from standardized situations." _Id._ (emphasis added).

Thus, in _Henderson_, because the ALJ limited the claimant to one to two step instructions (matching RDL 1), the jobs cited by the VE rated at RDL 2 would require, at a minimum, an ability to understand instructions _more complex_ than one to two step instructions. _See_ _Henderson_, 643 F. App'x at 276-77. Because the ALJ did not solicit an explanation from the VE or otherwise resolve that conflict in _Henderson_, the Fourth Circuit remanded. _Id._ at 277-78. Here, however, the ALJ limited Plaintiff to one to _three_

13

step instructions which, on its face, requires more mental ability than the one to two step instructions of RDL 1. Accordingly, Henderson does not compel the Court to find an apparent conflict between the limitation to one to three step instructions in this case and RDL 2.

Plaintiff also points to post-Henderson district court cases in the Fourth Circuit which have "found an apparent conflict between [an RDL] 2 or 3 and a[n RFC] limitation to [SRRTs]." (Id. at 6 (citing Dewalt-Gallman, 2017 WL 2257418, at *3-4, Lorch, 2017 WL 1234203, at *5, Adkins, 2017 WL 1089194, at *4, and Owens, 2017 WL 627405, at *7).) As an initial matter, Lorch, Adkins, and Owens all hold that an apparent conflict exists between SRRTs and RDL 3, a level of reasoning more complex than the RDL of 2 involved in this case and, therefore, those cases should not guide the Court's reasoning here. See Lorch, 2017 WL 1234203, at *5; Adkins, 2017 WL 1089194, at *4; Owens, 2017 WL 627405, at *7.

Further, although Dewalt-Gallman (and other District of South Carolina cases cited therein) found an apparent conflict between SRRTs and RDL 2, see Dewalt-Gallman, 2017 WL 2257418, at *3-4, the majority of post-Henderson district court cases within the Fourth Circuit, including two recent decisions from other judges of this Court, have found no such conflict between RDL 2 and SRRTs, see Collins v. Berryhill, No. 1:17CV224, 2018 WL 278667, at *5 (M.D.N.C. Jan. 3, 2018) (Webster, M.J.) (unpublished) ("Plaintiff's

14

limitation to unskilled work that is simple, routine, and repetitive in nature with routine changes in the work environment is not inconsistent with [RDL 2] jobs"), recommendation adopted, slip op. (M.D.N.C. Jan. 25, 2018) (Eagles, J.); Lawrence v. Berryhill, No. 1:16CV1310, slip op. at 5-6 (M.D.N.C. Nov. 17, 2017) (Webster, M.J.) (unpublished) ("The majority of courts that have considered this issue have concluded, either explicitly or implicitly, that a limitation to SRRTs is not inconsistent with the performance of [RDL 2]." (collecting cases)), recommendation adopted, slip op. (M.D.N.C. Dec. 20, 2017) (Eagles, J.); Testamark v. Berryhill, No. 3:16CV202 (REP), 2017 WL 4544899, at *11 (E.D. Va. Aug. 21, 2017) (unpublished) ("[T]he ALJ limited Plaintiff to simple, routine tasks consistent with the detailed yet uninvolved instructions involved in positions requiring [RDL] 2. Had the record supported an RFC that restricted [the p]laintiff to no more than one-to two-step instructions, like the claimant in Henderson, then an apparent conflict would have existed for the ALJ to address. But [the p]laintiff's case presents no such conflict. Thus, the ALJ discharged her responsibility when she asked the VE about the consistency between his opinion and the [DOT]. Because no apparent conflict existed — and not merely because the VE testified that none existed — the ALJ did not need to obtain further explanation."), recommendation adopted, 2017 WL 4544893 (E.D. Va. Oct. 11, 2017) (unpublished); Roundtree v. Berryhill, No.

4:15-CV-00154-F, 2017 WL 398368, at *3 (E.D.N.C. Jan. 30, 2017) (unpublished) (deeming Henderson "distinguishable" and finding no apparent conflict between SRRTs and RDL 2); see also Marshall v. Barnhart, Civ. No. 01-2211, 2002 WL 32488432, at *9-10 (D. Md. Sept. 27, 2002) (unpublished) (finding that a claimant limited to performing "simple, repetitive 1, 2, 3 step tasks" could perform job with [RDL 3]).

As no apparent conflict existed between the RFC's limitation to one to three step instructions and the RDL of 2 required by the VE's cited jobs, the ALJ did not err by failing to identify and resolve such conflict.

b. No High Production Demands

Next, Plaintiff contends that the mental RFC's prohibition of "high production demands" (Tr. 18) conflicts with two of the jobs cited by the VE, Final Inspector and Marker, because those jobs "appear to be production jobs." (Docket Entry 12 at 7.) According to Plaintiff, the Final Inspector job "is either part of or at the end of the production process of storage batteries . . . [a]nd the crosswalk in the [DOT] description for the [F]inal [I]nspector job shows it is in the 'Production Inspectors, Testers, Graders, Sorters, Samplers, Weighers' category of jobs." (Id. (referencing Docket Entry 12-3 (DOT description for Final Inspector)).)[5]

---

[5] The O*Net includes "crosswalks," or "cross references," between the O*Net's job classification system and the DOT's system. www.onetcenter.org/questions (last accessed Feb. 8, 2018); see also www.onetonline.org/crosswalk/DOT (containing the (continued...)

Plaintiff further asserts that the Marker job "also appears to require a production pace per the [DOT] description . . . [and] [t]he crosswalk in the [DOT] description for th[at] job is also 'Production Inspectors, Testers, Graders, Sorters, Samplers, Weighers.'" (Id. (referencing Docket Entry 12-1 (DOT description for marker)).)  With regard to both jobs, Plaintiff maintains that "[t]he O*Net seems to indicate these are in fact production pace/setting jobs." (Id. at 7-8 (referencing Docket Entries 12-6, 12-7, and 12-8 (O*Net materials regarding production inspectors, testers, graders, sorters, samplers, weighers, and marking clerks)).)

As an initial matter, the mere fact that a worker performs the Final Inspector job in a production setting does not mean that the job requires high production demands.  More significantly, however, the DOT description of the Final Inspector job's duties does not reflect such demands:

> Tests polarity connections on finished storage batteries and inspects final assembly for defects: Positions metal prongs of testing unit over terminals of intercell connecting straps and observes bulb on testing unit that lights when cell arrangement is correct.  Examines assembly for defects, such as omission of symbol on battery posts, uneven sealing, and cracked covers.

DOT No. 727.687-054, 1991 WL 679672.

With regard to the Marker job, Plaintiff misidentifies the "crosswalk" for the job in the DOT as "Production Inspectors,

[5](...continued)
O*Net's DOT crosswalk search function) (last accessed Feb. 8, 2018).

Testers, Graders, Sorters, Samplers, Weighers." (Docket Entry 12 at 7 (referencing Docket Entry 12-1).) The materials Plaintiff relies upon actually reflect the crosswalk as "Marking Clerks." (Docket Entry 12-1.) Moreover, Plaintiff made no attempt to elaborate on which duties in the DOT description for the Marker job "appear[] to require a production pace." (Docket Entry 12 at 7.) That failure forecloses relief. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

Plaintiff's assertion that "[t]he O*Net seems to indicate [the Final Inspector and Marker jobs] are in fact production pace/setting jobs" (Docket Entry 12 at 7-8 (referencing Docket Entries 12-6, 12-7, and 12-8)) fails for two reasons. First, Plaintiff did not buttress her vague claim that the O*Net "seems to indicate" that those jobs qualify as "production pace/setting jobs" with any supporting facts. (Id.) Plaintiff attached 30 pages of materials from the O*Net to the brief in support of her instant motion (see Docket Entries 12-6 through 12-9), but merely cited "(See Attached)" following her assertion regarding the O*Net (Docket Entry 12 at 8). Plaintiff should not expect the Court to

sift through 30 pages of materials to piece together her argument. See Zannino, 895 F.2d at 17; Hughes, 2014 WL 906220, at *1 n.1.

Second, and more importantly, SSR 00-4p requires ALJs to identify and resolve apparent conflicts only between the VE's testimony and the DOT. See SSR 00-4p, 2000 WL 1898704, at *2 ("Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."); Walker v. Berryhill, No. CV 16-01040-KES, 2017 WL 1097171, at *3 (C.D. Cal. Mar. 23, 2017) (unpublished) (observing that, apart from the DOT, "SSR 00-4p d[oes] not impose a similar requirement [that the ALJ identify and resolve] conflicts between VE testimony and the other documents administratively noticed in 20 C.F.R. § 416.966(d)")[6]

---

[6] The Commissioner's regulations do not expressly recognize the O*Net as a vocational resource upon which ALJs can rely, see 20 C.F.R. § 416.966(d) (stating that Commissioner "will take administrative notice of reliable job information available from various governmental and other publications," and listing as "example[s]" the DOT, County Business Patterns ("CBP"), Census Reports, Occupational Analyses prepared for the Commissioner by state employment agencies, and the Occupational Outlook Handbook ("OOH")). However, "the last publication of the [DOT] was in 1991, [and] the last significant update of the occupation information it contains occurred with the 1977 edition." Boston v. Colvin, No. 4:14-CV-206-D, 2016 WL 721563, at *15 (E.D.N.C. Feb. 2, 2016) (unpublished), recommendation adopted, No. 4:14-CV-206-D, 2016 WL 738762 (E.D.N.C. Feb. 23, 2016) (unpublished) (citing Government Accountability Office ("GAO") Report 12-420, Highlight: Modernizing SSA Disability Programs (June 2012)). As a result, the O*Net has replaced the DOT as the federal government's primary source of occupational information, see http://www.doleta.gov/programs/onet;
(continued...)

19

Moreover, Plaintiff does not cite to any other authority to support her argument that ALJs must identify and resolve apparent conflicts between the VE's testimony and the O*Net (see Docket Entry 12 at 7-8), and other courts have rejected Plaintiff's position, see Malfer v. Colvin, Civ. No. 12-169J, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013) (unpublished) ("[W]hile the [DOT] appears on the list of governmental and other publications from which the agency can take 'administrative notice of reliable job information,' the O*NET does not. Thus, even if the VE's testimony was in conflict with O*NET, there is no requirement that the VE's testimony comply with that database." (internal citations omitted)); Ryan v. Astrue, 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009) ("[The p]laintiff argues that the VE's testimony does in fact conflict with the [DOT], despite the VE's statement to the contrary. [The p]laintiff appears to be basing this argument on his application of O*Net. However, [the p]laintiff's reliance on O*Net is misplaced. Even if the VE's testimony was in conflict with O*Net, there is no requirement that the VE's testimony comply with that database." (internal citation omitted)); Willis v. Astrue, Civ. No. C08-1198-RSM, 2009 WL 1120027 at *3 (W.D. Wash.

---

[6] (...continued)
http://www.onetcenter.org/overview.html, and the Commissioner plans to develop an Occupational Information System to supplant the DOT as the Social Security Administration's primary vocational resource, see 73 Fed. Reg. 78864-01, 2008 WL 5329223 (Dec. 23, 2008); Dimmett v. Colvin, 816 F.3d 486, 489 (7th Cir. 2016) (noting that the Commissioner, "while aware of the obsolescence of the [DOT] . . ., hasn't endorsed the O*NET and . . . is developing its own parallel classification system").

Apr. 24, 2009) (unpublished) ("[The] plaintiff provides no basis for relying on a perceived conflict between the O-NET and the VE['s] testimony. . . . SSR 00-4p . . . specifically require[s] the resolution of conflicts between the [DOT] and a VE's testimony. . . . [The p]laintiff fails to provide any support for a contention that the creation of the O-NET altered this requirement.").[7]

Accordingly, Plaintiff has not demonstrated a conflict between the VE's testimony and the DOT with respect to the mental RFC's restriction against high production demands.

c. Occasional Interaction with Others

Plaintiff additionally maintains that the RFC's limitation to occasional interaction with others conflicts with (1) the O*Net's

---

[7] Research did not reveal any cases finding that an ALJ erred by not identifying and resolving an apparent conflict between the VE's testimony and the O*Net in light of SSR 00-4p. Although courts have remanded cases for the ALJ and/or VE to consider updated job descriptions in the O*Net, those cases occurred not in the context of apparent, unresolved conflicts under SSR 00-4p, but where the obsolescence of the particular DOT job descriptions in question rendered the ALJ's step five finding unsupported by substantial evidence. See, e.g., Dimmett v. Colvin, 816 F.3d 486, 490 (7th Cir. 2016) (relying on O*Net's more recent job descriptions for self-service laundry and dry cleaning attendant and dining room attendant to demonstrate the "fatally weak testimony" by the VE); Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) ("[T]he VE's dependence on the [DOT] listings alone does not warrant a presumption of reliability. E.g., O*NET Resource Center, http://www.onetcenter.org/datacollection.html (last visited Jan. 4, 2010). As such, we remand to the Commissioner for consideration of whether the [DOT] listings, specifically the document preparer and security camera monitor descriptions, were reliable in light of the economy as it existed at the time of the hearing before the ALJ."); Sinclair v. Berryhill, 266 F. Supp. 3d 545, 558–59 (D. Mass. 2017) (remanding case "where . . . more current job descriptions [in the O*Net] raise[d] doubts about the [VE's] (. . . and Commissioner's) reliance on the [DOT's]" archaic job descriptions); Feeley v. Commissioner of Social Security, No. 14-4970, 2015 WL 3505512 (D.N.J. June 3, 2015) (unpublished) (finding ALJ erred by adopting VE's testimony based on DOT's obsolete job description for telephone quotation clerk, and deeming O*Net's more updated job description more appropriate for VE's consideration). Here, Plaintiff has not sought relief based on the obsolescence of the DOT's job descriptions for Final Inspector, Marker, and Stock Checker (Apparel). (See Docket Entry 12 at 2-9.)

descriptions of the degree of interaction required by the Final Inspector and Marker jobs (see Docket Entry 12 at 8 (referencing Docket Entries 12-7, 12-8)); and (2) the Bureau of Labor Statistics' estimation of the percentage of workers in the "Laborers and Freight, Stock, and Material Movers, Hand" occupation who experience only occasional verbal communication (see id. at 9 (referencing Docket Entry 12-9)). However, as discussed above, SSR 00-4p requires the ALJ to identify and resolve apparent conflicts only between the VE's testimony and the DOT, see SSR 00-4p, 2000 WL 1898704, at *2, and Plaintiff has failed to cite any authority that would require the ALJ to also identify and resolve apparent conflicts between the VE's testimony and either the O*Net or the Bureau of Labor Statistics (see Docket Entry 12 at 8-9).

In sum, Plaintiff's first issue on review fails as a matter of law.

## 2. Mental RFC

In Plaintiff's second and final assignment of error, she alleges that "the ALJ d[id] not give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] difficulties in the broad areas of functioning and d[id] not make a complete finding as to [Plaintiff's] mental [RFC]" (id. at 9 (bold font omitted)), in violation of Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996

WL 374184 (July 2, 1996) ("SSR 96-8p"), and <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015) (<u>see</u> Docket Entry 12 at 9-15). In particular, Plaintiff attacks the sufficiency of the mental RFC in two respects: the ALJ (1) did not "account for [Plaintiff's] difficulties with concentration, persistence or pace [('CPP')]" or "make a finding as to [her] ability to stay on task" (<u>id.</u> at 11 (bold font omitted)); and (2) failed to "provide the required detailed assessment of the effect of [Plaintiff's] difficulties in social functioning on her ability to engage in sustained work activities" (<u>id.</u> at 14 (bold font omitted)). Those arguments miss the mark.

At steps two and three of the SEP, the ALJ must assess the degree of functional limitation resulting from Plaintiff's mental impairments pursuant to criteria in the corresponding mental disorders in the listing of impairments. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00; 20 C.F.R. § 416.920a(b)(2) & (c)(2). As relevant to the instant case, paragraphs B of Listings 12.04 ("Affective Disorders") and 12.06 ("Anxiety Related Disorders") each contain four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04B & 12.06B; <u>see also</u> 20 C.F.R. § 416.920a(c)(3). The ALJ's decision must include a specific finding of the degree of limitation in each of those functional

areas.  20 C.F.R. § 416.920a(e)(4).  However, the paragraph B criteria limitations <u>do not constitute an RFC assessment</u>.  SSR 96-8p, 1996 WL 374184, at *4 (emphasis added).  Rather, the ALJ uses those limitations to evaluate the severity of Plaintiff's mental impairments at steps two and three of the SEP.  <u>Id.</u>

"The mental RFC assessment used at steps 4 and 5 of the [SEP] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C," <u>id.</u>, and includes consideration of Plaintiff's "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting," <u>id.</u> at *6.  Thus, the regulations do not require the ALJ to incorporate word-for-word the limitations found in evaluating the severity of mental impairments into either the RFC or any hypothetical question.  <u>See</u> <u>Yoho v. Commissioner of Soc. Sec.</u>, No. 98-1684, 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (unpublished) (holding ALJ has no obligation to transfer paragraph B findings verbatim to hypothetical question(s)); <u>accord</u> <u>Patterson v. Astrue</u>, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (unpublished).

a.   <u>CPP</u>

Plaintiff first maintains that the ALJ failed to account for Plaintiff's moderate deficits in CPP in the mental RFC

determination.  (See Docket Entry 12 at 11-14.)  In that regard, Plaintiff argues that, pursuant to Mascio, "'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work . . . [because] the ability to perform simple tasks differs from the ability to stay on task[,] [and] [o]nly the latter limitation would account for a claimant's limitation in [CPP].'"  (Id. at 11-12 (quoting Mascio, 780 F.3d at 638 (internal quotation marks omitted)).)   According to Plaintiff, "[t]he ALJ mistakenly discusse[d] only [Plaintiff's] capability to perform simple and routine tasks, not her ability to stay on task."  (Id. at 12.) Plaintiff additionally faults the ALJ for according "great weight" to the opinions of the state agency psychological consultants (Tr. 21), who each opined that Plaintiff "may experience difficulty maintaining attention [and] concentration for extended periods of time" (Tr. 87, 107), but then failing to incorporate those opinions into the mental RFC.  (See Docket Entry 12 at 12-13.)  Plaintiff's arguments do not warrant relief.

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]."  Mascio, 780 F.3d at 638.  However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a

limitation in the RFC.  Rather, <u>Mascio</u> underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .  An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

<u>Jones v. Colvin</u>, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added).  Here, the ALJ's decision provides a sufficient explanation as to why limitations in the RFC to "[SRRTs] involving only 1 to 3 step instructions . . . with no high production demands . . . [and only] occasional interaction with others in the workplace" (Tr. 18) sufficiently accounted for Plaintiff's moderate limitation in CPP.

First, the ALJ noted that Plaintiff "allege[d] disability based on symptoms of her mental impairments, e.g., difficulty concentrating and getting along with others," but concluded that "the record as a whole, does not fully corroborate the disabling severity of symptoms and degree of limitation alleged" by Plaintiff, and that Plaintiff's "mental impairments were stable with medication and individual therapy."  (<u>Id.</u>)  The ALJ further found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record," noting that "[a] careful review of the medical and

other evidence of record . . . revealed stark contrasts between [Plaintiff's] allegations and the objective and clinical findings." (Tr. 19.) Plaintiff has not challenged the ALJ's evaluation of Plaintiff's subjective complaints. (See Docket Entry 12.)

Second, the ALJ summarized Plaintiff's mental health treatment, making the following, pertinent observations:

- Consultative examiner Dr. Ronald D. Franklin "noted that [Plaintiff's] thought processes were concrete and specific, and [Plaintiff] denied hallucinations, illusions, and depersonal-izations" (Tr. 21; see also Tr. 340);

- Dr. Franklin "determined that [Plaintiff] was able to sustain attention to perform simple repetitive tasks" (Tr. 17; see also Tr. 391);

- "[D]espite her mental impairments, [Plaintiff] reported having a good memory and good concentration" (Tr. 17; see also Tr. 348);

- During ongoing therapy, Plaintiff "was engaged" and "made progress toward her treatment goals" (Tr. 21; see also Tr. 371-85, 558-632); and

- Plaintiff "cancelled her individual therapy sessions multiple times" and "it would appear that [Plaintiff] did not think her symptoms were that severe, as she did not consistently participate in individual therapy, [from] which she could have benefit[t]ed" (Tr. 21; see also Tr. 560, 563, 565, 571, 574, 587, 596-602, 604, 612, 613, 616, 617, 624-26).

Third, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 21-22.) Notably, the ALJ gave "great weight" to the opinions of the state agency psychological consultants (Tr. 21), who each opined that, despite moderate deficit in CPP (see Tr. 82,

102), Plaintiff remained "capable of performing SRRTs . . . in low stress environments [with] limited social demands" (Tr. 88, 108). Although Plaintiff faults the ALJ for failing to incorporate the consultants' opinion that Plaintiff "may experience difficulty maintaining attention [and] concentration for extended periods of time" (Tr. 87, 107 (emphasis added)) into the mental RFC (see Docket Entry 12 at 12-13), Plaintiff overlooks the fact that the consultants ultimately concluded that, despite Plaintiff's possible difficulty in maintaining attention and concentration for extended periods of time, she remained capable of performing SRRTs if provided a low stress environment and limited social demands (see Tr. 88, 108).

Fourth, the ALJ's restriction to "no high production demands" in the RFC (Tr. 18) "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.). In that regard:

> [T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in this case sufficiently accounts for [the p]laintiff's moderate limitation in CPP. Moreover, that approach makes sense. In Mascio, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not

necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," <u>see</u> 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, <u>Mascio</u> does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

<u>Grant</u>, 2016 WL 4007606, at *9; <u>see also</u> <u>id.</u> at *7-9 (discussing authority addressing "non-production" restrictions).

Under these circumstances, the ALJ adequately explained why limitations to "[SRRTs] involving only 1 to 3 step instructions . . . with no high production demands . . . [and only] occasional interaction with others in the workplace" (Tr. 18) sufficiently accounted for Plaintiff's moderate limitation in CPP.

b. <u>Social Functioning</u>

Plaintiff faults the ALJ's decision-making with respect to her ability to function socially in two respects: the ALJ (1) failed to explain what "occasional interaction with others" means, i.e., "face-to-face, in the same room, in the same area, on the telephone, via email, via text, etc." (Docket Entry 12 at 14 (citing Tr. 18)); and (2) "d[id] not fully explain in the [RFC] what effect on [Plaintiff's] ability to engage in work activity is caused by her [moderate] limitation[] in social functioning" (<u>id.</u> at 14-15). Those arguments fail.

29

Although Plaintiff concedes that the ALJ significantly restricted Plaintiff's contact with the public, supervisors, and co-workers to accommodate Plaintiff's moderate limitation in social functioning (see Docket Entry 12 at 14-15; see also Tr. 18), he faults the ALJ for failing to define the term "interaction," which allegedly "left the Court to guess what [the ALJ] mean[t] and allowed the [VE] to use [her] own definition without explanation" (Docket Entry 12 at 14). This line of argument entitles Plaintiff to no relief.

As an initial matter, Plaintiff has not shown why the term "interaction" warrants explanation beyond its common, every day meaning. (See Docket Entry 12 at 14.) Nor does it appear he could. See Watts v. Berryhill, No. 3:16-CV-00850-FDW, 2017 WL 6001639, at *4 (W.D.N.C. Dec. 4, 2017) (unpublished) ("[The p]laintiff further contends the ALJ must explain what it means by interpersonal interaction. The [c]ourt disagrees. The meaning of interpersonal interaction is not ambiguous: it covers all communication between people. See Interpersonal Definition, Oxford Dictionary, https://premium.oxforddictionaries.com/us/english/ (last visited Nov. 8, 2017) ('Relating to relationships or communication between people.').").

Even more significantly, the VE did not express any difficulty in understanding the meaning of "occasional interaction" in the ALJ's hypothetical (see Tr. 69-72), and Plaintiff's representative,

despite an opportunity for cross-examination, declined to question the VE on any subject, let alone the meaning of the term "interaction," or whether the jobs cited by the VE accommodated a restriction to occasional interaction with others (see Tr. 71). That consideration also forecloses relief. See Pierson v. Commissioner of Soc. Sec., No. 1:12-cv-126, 2013 WL 428751, at *7 (S.D. Ohio Feb. 1, 2013) (holding that, "despite the purported vagueness of the term [superficial], any error would be harmless as the VE was able to understand the term and testified that there were jobs in the local and national economy that [the] plaintiff could perform").

Plaintiff's contention that the ALJ "d[id] not fully explain in the [RFC] what effect on [Plaintiff's] ability to engage in work activity is caused by her [moderate] limitation[] in social functioning" (id. at 14-15) also lacks merit. First, the ALJ gave "great weight" to the opinions of the state agency psychological consultants (Tr. 21), who each concluded that Plaintiff remained capable of jobs with "limited social demands" (Tr. 88, 108), despite findings of moderate and mild limitation in social functioning, respectively (see Tr. 82, 102). Moreover, Plaintiff neither disputes the ALJ's finding of moderate limitation in social functioning (see Tr. 16) and description of Plaintiff's ability to engage in social activities (see Tr. 17), nor makes any attempt to show how a moderate limitation in social functioning should have

<u>further</u> impacted the ALJ's RFC beyond the limitation to occasional interaction with others (<u>see</u> Docket Entry 12 at 14-15). Under such circumstances, the Court can meaningfully review the ALJ's decision-making with regard to Plaintiff's social functioning.

In short, Plaintiff's second assignment of error does not entitle her to reversal or remand.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 8, 2018